ROYAL INS. CO., Limited, v. OKASAKI.
(No. 451.)

(Court of Civil Appeals of Texas. El Paso. May 20, 1915. Rehearing Denied June 10, 1915.)

1. TRIAL ⬤⟾358—SPECIAL FINDINGS.
　　Where there is an irreconcilable conflict between two special findings, the case must be resubmitted.
　　[Ed. Note.—For other cases, see Trial, Cent. Dig. § 856; Dec. Dig. ⬤⟾358.]

2. INSURANCE ⬤⟾146—CONSTRUCTION OF POLICIES.
　　Insurance contracts are governed by the same rules as contracts between individuals.
　　[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 292, 294–298; Dec. Dig. ⬤⟾146.]

3. INSURANCE ⬤⟾335 — FORFEITURE FOR BREACH OF WARRANTY—LOSS OF INVENTORY—NEGLIGENCE.
　　Where a fire insurance policy required the insured to take and preserve in a fireproof safe an inventory of the insured stock, the failure to preserve such inventory or an equivalent thereof forfeits the insurance.
　　[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 852, 853; Dec. Dig. ⬤⟾335.]

4. INSURANCE ⬤⟾335 — FORFEITURE FOR BREACH OF WARRANTY—DAMAGE TO INVENTORY—NEGLIGENCE.
　　Where the owner of an insured stock of goods negligently left his inventory outside the safe the night of the fire, and it was thereby damaged so that 15 per cent. of it was unintelligible, there can be no recovery on a policy which required the inventory to be preserved in a fireproof safe.
　　[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 852, 853; Dec. Dig. ⬤⟾335.]

5. INSURANCE ⬤⟾335 — FORFEITURE FOR BREACH OF WARRANTY—BOOKS.
　　The requirement of a fire insurance policy that the insured shall keep a set of books showing a complete record of the business transacted is complied with where the books preserved give sufficient information to establish a complete record of the business without resort to outside sources of information, though the journal was burned.
　　[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 852, 853; Dec. Dig. ⬤⟾335.]

Error from District Court, Harris County; N. G. Kittrell, Special Judge.

Action by T. B. Okasaki against the Royal

Insurance Company, Limited. Judgment for the plaintiff, and defendant brings error. Reversed and remanded.

Thompson, Knight, Baker & Harris and W. C. Thompson, all of Dallas, for plaintiff in error. Gill, Jones & Tyler, of Houston, for defendant in error.

WALTHALL, J. This suit was begun by a petition filed October 9, 1912, by T. B. Okasaki, plaintiff, against defendant, the Royal Insurance Company; Limited, a foreign corporation doing an insurance business in this state, wherein it is alleged that on September 12, 1911, plaintiff was the owner of a stock of Japanese art goods situated at 715 Main street, Houston, Tex., and that on the same date and thereafter, on September 22, 1911, defendant, for premiums paid, issued policies of insurance, Nos. 2539 and 2535, to plaintiff against loss of said stock of goods by fire, each in the sum of $2,500, and each extending for one year; that at the times of the issuance of the policies and at all times, the stock insured was of the value of $9,087.57, and that plaintiff was the owner; that on May 9, 1912, the stock was totally destroyed by fire; that plaintiff performed all of the conditions of the policies and made proof of loss, etc., and demanded payment; that defendant denied liability; that a clause in the policy sued on is to the effect that the defendant shall not be liable under said policies for a greater portion of any loss on said stock of goods than the amount of insurance represented by said policy shall bear to the whole insurance; that the insurance carried in addition to the policy sued on was a policy in the Phœnix Assurance Company, Limited, in the sum of $2,500, and a policy in the Alliance Insurance Company in the sum of $2,500; that by reason of the facts alleged, defendant became liable to him under each of said policies in the sum of $2,271.89, totaling a liability of $4,543.78, with interest.

The defendant answered by general demurrer and special exceptions, general denial and further, that the policies sued on contained a provision known as the record warranty clause, wherein the assured agreed to take an itemized inventory of stock on hand at least once each calendar year, and within 12 months of the last preceding inventory if such had been taken, unless such inventory had been taken within 12 calendar months prior to the date of the policies, which provision in the policy defendant says plaintiff failed to observe, and that plaintiff failed to make and prepare in the regular course of business a set of books clearly and plainly presenting a complete record of business transacted as provided by section 2 of said clause, and failed to keep the inventories as required by section 1 of said clause, and present same after the fire, in so far as any of same had been taken, and failed to keep and after the fire present the books containing complete record of business transacted, in so far as same had been prepared, in accordance with section 3 of said clause. That in consequence of said failures to comply with said warranty clause, the policy became void.

Plaintiff filed supplemental petition, containing exception and general denial; denial that he had failed to comply with the record warranty clause; alleged compliance in all particulars; had made and preserved all inventories and books required, and established the actual loss by reason of the fire; that the books and inventories kept by him were kept in the fireproof safe at night and when his store was not open for business and that all had been tendered to defendant for examination, and tendered in court; and alleged in the alternative, that if the books and inventories were not kept in an iron safe or other secure place that any left out and exposed on the night of the fire were exposed inadvertently, and without intention to fail to preserve same, and that if any were destroyed or injured in the fire, defendant was not thereby injured; that the full intent and purpose of the provisions of the policy were complied with; that the fire originated in another building than that of plaintiff, and through no fault of his; that his stock of goods was completely destroyed by fire. The court submitted the case to the jury on special issues, and on return of verdict rendered judgment for plaintiff for the sum of $4,468.78 principal, and $201.19 interest. Motion for new trial was overruled. Notice of appeal given, ordered that the original inventory (Exhibit F) be sent up with the record. Case brought up by writ of error.

Appellant's first assignment of error complains of the refusal of the court to give a peremptory instruction in defendant's favor, except as to premiums tendered, and undertake to support said assignments by four propositions, to the effect: First, that where an insurance company stipulates that a complete itemized inventory of stock on hand shall be taken within 30 days after the issuance of the policy, unless one has been taken within 12 calendar months prior thereto, or the policy shall be null and void thereafter, the policy ceases at the end of the 30 days where the stipulation has not been complied with; second, where the policy contains a stipulation for the keeping, preservation, and presentation of inventories of stock taken during the current year and all those taken during the preceding calendar year which were on hand when the policy issued, to be kept securely locked in a fireproof safe at night, and where the undisputed evidence shows that the inventories relied on by plaintiff were not so kept, preserved, or produced, plaintiff should not recover; third, where the policy stipulated that the assured should keep, preserve, and present all inventories taken after the issuance of

the policy securely locked in a fireproof safe at night and at all times when the building mentioned in the policy was not open for business, and the undisputed evidence shows that such inventory was left out of the safe, burned and destroyed, the fire occurring at night, plaintiff should not recover; fourth, a like provision that assured would make, preserve, and present certain books called for and which the undisputed evidence shows was not complied with, assured should not recover. The record warranty clause contained the stipulations covering the several matters referred to in the propositions.

Defendant tendered special charges on each of the matters contained in the several propositions, stating that the undisputed evidence in the case shows that there has been a failure upon the part of plaintiff to comply with the provisions in the policy in the matter stated in special charge, and referred to in the proposition to which the charge related; each of the special charges was refused by the court. The court submitted to the jury for their finding in special issues all of the matters stipulated to be done in the warranty clause of the policy and set out in said propositions, and the jury found that plaintiff had complied with the stipulation requiring the taking of a complete inventory of stock, embraced in appellant's first proposition. On issues submitted, the jury found that the fire that destroyed plaintiff's goods occurred at night when the store was not open for business; that the inventory was injured by the fire; that at the time of the fire, the inventory was not in the safe; that the inventory at the time it was offered to be presented to defendant after the fire, contained and showed a substantially complete list of the items of the inventory and values which had been listed on said inventory in connection with said items, with reasonable truth and accuracy; that the inventory shows and furnishes substantially all information which would have been furnished by such inventory, if it had been presented to defendant after the fire in an undamaged condition; that 85 per cent. of the inventory was intelligible and could be read and identified as to the name, number, and value of such items after the fire, and 15 per cent. of the inventory was not intelligible after the fire, at the time defendant's agent was first notified that the inventory had been found; that the inventory at that time did not show all figures representing totals of values of the items originally contained therein; that plaintiff, in the regular course of business, made and prepared a set of books which clearly and plainly presented and showed with substantial truth and accuracy a complete record of the business transacted in connection with the property insured, including all sales, purchases, and shipments; that plaintiff saved and preserved from loss by the fire the set of

books mentioned, and after the fire offered to present them to defendant; that the defendant or a qualified bookkeeper could have determined with reasonable accuracy from the books the amount of plaintiff's loss; that Furuga made the erasure, after the 15th of January, 1912, in the books showing the entry of the shipment to Galveston; that the journal and blotter kept in the regular course of plaintiff's business were burned in the fire and were never presented or offered to defendant; that the plaintiff or the witness Cochran for him, in making up the proofs of loss, furnished to defendant, was able to make up such proofs without resorting to outside sources of information or facts not found in the books; that the books did not fail to show with substantial truth and accuracy all the sales and shipments made from the stock including a shipment of January 16, 1913, named in the evidence in some parts as a shipment of $182.08, and in the others of $1,182.08; the original ledger, Exhibit D, page 13, shows $1,182.08 with no erasure; that the amount of plaintiff's loss by fire can be ascertained with reasonable accuracy from the books preserved from the fire; that plaintiff did not, on or about January 15, 1912, take an inventory of the stock of merchandise on hand; that the actual cash value at the time immediately preceding the fire of plaintiff's stock of merchandise insured was $10,010.80; that the actual cash loss to the stock by fire in the two policies sued on was the sum of $8,937.57; that the total amount of insurance on the stock at the time of the fire was $10,000; that plaintiff was the sole owner of the stock insured; that the value of the salvage was $150.

A careful examination of the evidence shows that the findings of the jury are not without evidence to support them. The jury found and the evidence shows that the inventory stipulated for in the record warranty clause was taken of the stock then on hand in August before the policies were written, in September, 1911. The first proposition cannot be sustained.

[1] The fire occurred at night, at a time when the store was not open for business, and at the time of the fire, the inventory was not in the fireproof safe as stipulated for in the policy; while the inventory was injured by the fire, 85 per cent. being intelligible and 15 per cent. being unintelligible, and did not show all the figures representing totals of values of the items originally contained therein, the jury found that the inventory as a whole did show substantially all information which would have been furnished by such inventory if the same had been in an undamaged condition. Does the inventory as found satisfy the stipulation in the policy? We feel inclined to exclude from consideration in determining the question of a substantial compliance with the stipulation in the policy, the findings of the jury that the

inventory showed substantially all the information necessary, as being more a conclusion than a fact, in view of the finding that 85 per cent. of the inventory was intelligible, and 15 per cent. unintelligible. If it is considered that there is an irreconcilable conflict in these two findings, the case should be resubmitted that a proper conclusion on the issue might be reached.

[2] In the case of Brown v. Insurance Company, 89 Tex. 594, 35 S. W. 1060, the Supreme Court held that insurance contracts are governed by the same rules as contracts between individuals.

[3] In Western Assurance Company v. Kemendo, 94 Tex. 367, 60 S. W. 661, the Supreme Court of this state said that an itemized inventory is one that specifies the different articles composing the stock insured, and, if that which is offered as a substantial compliance with the requirement does not furnish the means of ascertaining the same facts that an inventory would, then it cannot be held to be a substantial compliance with the contract. The object of having the inventory was to ascertain the different articles which went to make up the stock in order to test the correctness of the claim. The failure to preserve and produce the inventory or its equivalent in these particulars would not be a substantial compliance with the requirements of the policy. The failure, through negligence, to preserve and produce such an inventory would work a forfeiture of the policy. Roberts, Wells & Taylor v. Sun Mutual Insurance Company, 19 Tex. Civ. App. 338, 48 S. W. 559.

[4] If the inventory had been in the safe and the condition in which it was found after the fire was the result of the fire, we think a compliance with the terms of the policy might be conceded, as the policy undertook to state the means by which the inventory was to be preserved from loss or injury. But it was not in the safe at a time when it should have been, and its condition was through negligence of the assured. Rivers v. Association of Philadelphia, 77 S. W. 424. It seems to us that where the inventory was left out of the safe at a time when it should have been in the safe under the terms of the policy, and that because of its being left out of the safe, it becomes so defaced by the fire that 15 per cent. of it is wholly unintelligible, in that it does not furnish to the insurance company, substantially, the information that could have been obtained through the inventory, if the policy provision had been complied with, it is not such an inventory as was contracted for in the policy to be preserved and produced, and the insurance company cannot be required to accept it. Counsel for appellee cite and argue with much force that the case of Hartford Fire Insurance Company v. Walker, 153 S. W. 398 is directly in point, but we do not so regard the case. The objection there was as to the sufficiency of the inventory, first, that the entries as to the articles listed were too indefinite and uncertain in meaning, and second, that the cost or value of the articles listed was lacking. The court said that common usage would explain the characters used. "W. Oats" and "R. Oats" were sufficient to designate "White Oats" and "Red Oats," and the evidence in that case showed that the two grades only were handled. On the second objection, the court held, after giving a number of definitions of the word "inventory":

"It does not appear from the language used by the parties that the cost or value of the goods should be stated in the list."

In this case there is a total absence, through the negligence of the assured to show anything by way of an inventory, to specify from 15 to 25 per cent. of the different articles composing the stock insured.

[5] The second proposition under the first assignment is sustained. Was the stipulation as to the books to be kept and preserved complied with? We need only refer to the findings of the jury on this issue. They found that the journal or blotter was burned, but that the books preserved and tendered to defendant after the fire clearly and plainly showed with substantial truth and accuracy a complete record of the business transacted in connection with the property insured. The policy did not indicate what system of bookkeeping must be observed nor the number or kind or what books must be kept, but a set of books, showing a complete record of business transacted. If the books which the insured kept were kept with such degree of accuracy and in such manner as to show to a man of ordinary intelligence a complete record of the business transacted, including all purchases and sales, both for cash and credit, it seems to us that the stipulation in the policy would be satisfied. The evidence of the expert bookkeeper Cochran shows that this was done, and the jury so found. They found that it was not necessary for Cochran in making up the proofs to resort to outside sources for information, but that he did so for verification, and this finding seems to have evidence to sustain it.

The second, third, fourth and fifth assignments of error seem to be repetitions of propositions discussed and disposed of under the first assignment. The sixth assignment complains that the verdict is excessive. The jury found the actual cash value of the stock to be $10,010.80, and the actual cash or monetary loss, that is, the cost to defendant in error, as shown in Cochran's proof of loss, to be $9,087.57. There is some uncertainty in the proof as to the value of the salvage. The only witness who testified to its value, so far as we have found, stated that it is not worth over $100. The jury found its value to be $150, and found that the net loss by fire was $8,937.57, and judgment was rendered for $4,468.78 principal, and $201.19 interest. It seems to us that under the evidence and find-

ings of the jury, the judgment is excessive to the extent of at least $50, and we so hold.

For reasons stated in our observations under the first assignment, the cause is reversed and remanded.